FOUNTAIN *v.* GRANT.

No. 18027. ARGUED NOVEMBER 12, 1952—DECIDED JANUARY 13, 1953—REHEARING DENIED FEBRUARY 9, 1953.

W. B. Mitchell, for plaintiff in error.

Hugh Sosebee and Steve Schalasny, contra.

ALMAND, Justice. On August 27, 1952, W. L. Fountain filed an equitable petition in the Superior Court of Monroe County against Kendall L. Grant, praying that the defendant be enjoined from selling described land under the power of sale contained in a deed to secure debt executed by the petitioner to Farmers Bank of Forsyth and transferred to Grant, which land was being advertised by the defendant by reason of alleged failure by the plaintiff to pay taxes and keep insurance on the improvements on the property; and praying also that the amount of the indebtedness secured by said·deed be determined. The defendant filed no pleadings. The court granted a restraining order, and after hearing evidence refused an interlocutory injunction. The plaintiff excepted.

On the interlocutory hearing, the following facts appeared without dispute: On August 28, 1950, W. L. Fountain executed to the Farmers Bank a promissory note for $10,410, payable $100 per month with interest at 6% per annum; and to secure the same he executed to the bank a security deed to described land, and a bill of sale to certain personal property. On November 15, 1950, he executed to the bank his unsecured note for $3872. It does not appear when this last-named note was payable. On January 17, 1952, the $10,410 note and the deed and bill of sale securing it were transferred to Kendall L. Grant, who left these papers with the bank. From October 16, 1950, through June 2, 1952, Fountain made to the bank numerous cash payments totaling $2134.59. On March 2, 1951, the bank received $3212.41 from a sale of some of the personal property covered by the bill of sale executed by Fountain to it. This amount, and $659.59 of the cash payments, were applied by the bank to the payment of the unsecured note. The remainder of the cash payments, $1475, was credited on the secured note, $975 being so credited before it was transferred to Grant and

$500 credited thereon afterwards. Fountain also paid to the clerk of the superior court for Grant $275. After the $3872 note was paid, it was so marked and given to Fountain by the cashier of the bank, and Fountain gave the same to his attorney.

It also appeared that, at the time the instant petition was filed, the 1951 State and county taxes had not been paid and that an insurance policy covering a building and contents, described in the security deed and bill of sale executed to the bank by Fountain, had expired on July 19, 1952, the plaintiff having failed to renew it.

Grant denied the making of a tender alleged by the plaintiff in his petition, and in his testimony stated: "I contend that Mr. Fountain owes me today $9958.50. . . I now refuse to accept tender of $5629.02 and the $275 on deposit in the clerk's office."

The plaintiff testified: That when he made the cash payments to the bank, he asked for receipts, but none were given him except for one $25 payment; that he told the bank to put it on the secured note. "When they sold the store down there, I gave Mr. Carter [cashier of the bank] direction as to the credits of the payment. I told him to put it on my security note, the one I had in there, the big note. . . I meant for all of it to go on the big note."

Harris Carter testified: That he was cashier of the Farmers Bank of Forsyth from the time the $10,410 loan was made to Fountain through the date of the last payment made to the bank in June, 1952; that the bank found a purchaser for the personal property sold, and this purchaser paid the bank the purchase price. "This $3200 payment was payment for the security that was sold. I mean to say when we sold some of the security we didn't apply it on this note, not when we had a plain note. We took the plain note up first, November 16. It was a later indebtedness than this. It was agreeable with Mr. Fountain how we credited it. He was familiar with all of it. He made the statement to me that he wanted the money from the sale of that property down there applied on his debt, not on his mortgage. . . I think maybe we told him that the plain note would have to be taken up first. . . We don't have any rule to credit payments on the oldest indebtedness

. . . and we didn't let Mr. Fountain direct us in anything we did."

The main and controlling issue of fact before the trial judge was whether or not the indebtedness that the loan deed was given to secure had been satisfied by the payments and tender. On the question of payment, the evidence is in direct conflict as to whether certain of the payments made by the plaintiff should have been applied to the secured note or the unsecured note. The trial judge was authorized to draw the conclusion from the evidence that the bank had applied some of the payments to the unsecured note with the knowledge and consent of the plaintiff, and that the plaintiff, by accepting the surrender of the unsecured note as having been paid, acquiesced in the application by the bank of such payments on the unsecured note rather than on the secured indebtedness. Though the plaintiff may have directed the application of the payments to the secured note, the judge was authorized to find that he had consented, directly or impliedly by his acts, to a different application from that requested, and he was estopped by such acquiescence. *Bird* v. *Benton,* 127 *Ga.* 371 (3) (56 S. E. 450); *Wilder* v. *Federal Land Bank of Columbia,* 185 *Ga.* 837, 839 (196 S. E. 708). There was no error in denying the prayer for an interlocutory injunction.

*Judgment affirmed. All the Justices concur, except Atkinson, P. J., not participating.*